UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DANIEL LEE WHITFIELD,

        Plaintiff,                                 Case No. 1:07-cv-399

v.                                                        Honorable Robert Holmes Bell

MICHAEL WHALEN et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff must pay the initial partial filing fee when funds are available. Plaintiff is currently incarcerated at the Bellamy Creek Correctional Facility (IBC), but the events giving rise to his complaint occurred while he was incarcerated at the Muskegon Correctional Facility (MCF). In his *pro se* complaint, Plaintiff sues the following MCF employees: Health Care Unit Manager Michael Whalen, Registered Nurse (RN) Todd Hix, RN William Barrett, RN Mark Kelly, RN Joan Biesiada, and RN Tamerla Hamilton. The Court ordered service of Plaintiff's Eighth Amendment claim against Defendants on May 22, 2007.

On July 9, 2007, Defendants Hamilton, Whalen, Hix, Barrett and Kelly (hereinafter "Defendants") filed a motion and supporting brief for summary judgment[1] (docket #'s 9, 10)

---

[1] Defendants Hamilton, Whalen, Hix, Barrett and Kelly titled their motion as a motion for summary judgment. The motion, however, states: "Defendants Michael Whalen, Todd Hix, William Barrett, Mark Kelley and Tamerla Hamilton, by counsel, *move to dismiss* Plaintiff's complaint . . . ." (Defs.' Mot. for Summ. J. at 1, docket #9) (emphasis added.) The supporting brief failed to refer to any Federal Rule of Civil Procedure. Because Defendants Hamilton, Whalen, Hix, Barrett and Kelley rely on evidence outside the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b). (*See* Exs. 1, 2, & 3 to Defs. Br. in Supp. of

because Plaintiff allegedly failed to exhaust his administrative remedies. Plaintiff did not file a reply to Defendants' Motion for Summary Judgment in this Court.[2] On August 1, 2007, however, Defendants filed "Defendants' Reply to Plaintiff's Brief opposing Summary Judgment for Failure to Exhaust in Compliance with 42 USC §1997(e)(a)." (docket #13).

Upon review, I recommend that Defendants Hamilton, Whalen, Hix, Barrett and Kelley's motion for summary judgment (docket #9) be denied.

### **Applicable Standard for Summary Judgment**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56©; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

Mot. for Summ. J., docket #10.) Further, all parties "shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." FED. R. CIV. P. 12(b). By order dated July 17, 2007 (docket #12), both parties have received ample opportunity to respond.

[2]While Plaintiff did not file a response to Defendants Hamilton, Whalen, Hix, Barrett and Kelley's Motion for Summary Judgment with this Court, he must have sent a response to Defendants. In "Defendants' Reply to Plaintiff's Brief Opposing Summary Judgment for Failure to Exhaust in Compliance with 42 USC §1997(e)(a)" (docket #13), Defendants refer to Plaintiff's response.

the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). When moving for summary judgment, a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**Facts**

In his *pro se* complaint, Plaintiff asserts an Eighth Amendment claim against Defendants Hamilton, Whalen, Hix, Barrett and Kelley for failing to provide medical care. Plaintiff makes the following factual allegations, which Defendants do not controvert for purposes of the present motion. Plaintiff claims that he cut a toe deeply while clipping an ingrown toenail prior to January 26, 2005. For several months, multiple nurses examined Plaintiff's toe, including Nurse Karen Boeve on January 26, 2005, Defendant Biesiada on February 22, 2005, Defendant Hamilton on March 1, 2005, Defendant Hix on March 8, 2005, Defendant Biesiada on May 3, 2005, Defendant Hix on May 20, 2005, Defendant Kelley on June 16, 2005, and Defendant Hix on July 2, 2005.[3] All of those nurses supplied Plaintiff with band-aids and anti-bacterial ointment for treatment.

Plaintiff also sent several medical kites to see a doctor between January 26, 2005 and July 2, 2005, to no avail. He was told more than once that his chart would be referred to Defendant Whalen for approval, but Plaintiff never received a doctor's appointment. On July 2, 2005, Defendant Hix told Plaintiff that no doctor's appointment had been scheduled for him because the doctor at MCF quit. (Compl. at 6, docket #1.)

On July 2, 2005, Plaintiff bumped his injured toe while climbing into his bunk bed. Plaintiff claims that his toe bled profusely. (Compl. at 7.) After a resident unit officer inspected Plaintiff's toe, the Michigan Department of Corrections (MDOC) transported Plaintiff to Hackley Hospital for further evaluation. A doctor then removed Plaintiff's toenail and informed him that it may have been necessary to amputate his toe if he had waited any longer. (*Id.*)

---

[3] Plaintiff did not list Nurse Karen Boeve as a Defendant in this action.

On July 5, 2005, Plaintiff filed Grievance No. MCF-05-07-00483-123 against health services for lack of medical care. (Ex. F. to Compl., docket #1.) He appealed Grievance No. MCF-05-07-00483-123 through the three-step grievance process.

Plaintiff requests declaratory and injunctive relief and compensatory and punitive damages. (Compl. at 8.)

## Discussion

### I. Applicable Law

Defendants assert that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with state-created deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

In *Woodford*, 126 S. Ct. at 2387, the Supreme Court described the doctrine of "proper exhaustion" in administrative law. "Proper exhaustion" occurs when a plaintiff complies with the

administrative agency's deadlines and "critical procedural rules," such as time limits for filing grievances. *Id.* at 2386-388. It is a precondition to any suit challenging prison conditions. *Id.* As "a general rule . . . [,] courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice*." *Id.* at 2385 (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) (emphasis in original)). The Supreme Court has emphasized that the exhaustion doctrine affords the administrative agency an opportunity to correct the problem before the issue is reviewed by a court. *L.A. Tucker Truck Lines, Inc.,* 344 U.S. at 37; *see also Sims v. Apfel,* 530 U.S. 103, 108-09 (2000) (finding that where an agency's regulations require issue exhaustion, an objection not raised will not be considered by a court); *Unemployment Compensation Comm'n of Alaska v. Aragon,* 329 U.S. 143, 155 (1946) ("[t]he responsibility of applying the statutory provisions to the facts of the particular case was given in the first instance to the Commission. A reviewing court usurps the agency's function when it sets aside an administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action."); *Hormel v. Helvering,* 312 U.S. 552, 556-57 (1941).

The *Woodford* Court examined the text of the Prison Litigation Reform Act of 1995 (PLRA), finding that it required administrative exhaustion. *Woodford,* 126 S. Ct. at 2387. Proper exhaustion serves the PLRA goals of (1) limiting federal court interference with the administration of prisons, (2) affording officials time and opportunity to address complaints internally before the initiation of a federal lawsuit, and (3) reducing the quantity and improving the quality of prisoner suits. *Id.*

The Supreme Court's recent decision regarding PLRA exhaustion, *Jones,* 127 S. Ct. at 922, did not modify *Woodford's* holding regarding "proper exhaustion," but made it clear that courts were not free to embellish the statutory elements of exhaustion with requirements of their own. *Id.* The *Jones* Court overturned the Sixth Circuit's requirement that prisoners must specifically plead or demonstrate exhaustion in their complaints. *Id.* at 921. Rather, the *Jones* Court held that a prisoner's failure to exhaust is an affirmative defense under the PLRA. *Id.* In rejecting the requirement that a prisoner had to identify any party he or she sought to sue in an initial grievance, the *Jones* Court concluded the Sixth Circuit's policy lacked a textual basis in the PLRA:

> In *Woodford,* we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," 548 U.S., at ----, 126 S.Ct. 2378 (slip op., at 5)--rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. As the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.

*Jones,* 127 S. Ct. at 922-23.[4] The *Jones* Court also struck down the Sixth Circuit's total exhaustion rule, finding that a district court may proceed on a prisoner's exhausted claims and dismiss the unexhausted claims. *Id.* at 924-26.

---

[4]Because "the MDOC's procedures make no mention of naming particular officials," the *Jones* Court held that "the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." *Jones*, 127 S. Ct. at 923. The *Jones* Court, however, dealt with MDOC Policy Directive 03.02.130, effective November 1, 2000. In that version of MDOC Policy Directive 03.02.130 there was no requirement that particular officials be named in a Step I grievance.

II.     **Applicable Policy**

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[5] was the version in effect at all times applicable to this lawsuit. Under MDOC Policy Directive 03.02.130, inmates must first attempt to resolve a problem orally with the staff member involved, within two business days of becoming aware of the grievable issue unless prevented by circumstances beyond his or her control. MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ X. The Policy Directive also provides the following directions for completing grievance forms: "[t]he issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). Once a grievance is filed, the grievance coordinator determines if the grievance should be rejected "pursuant to this policy and, if so, sign and return the grievance to the grievant with an explanation as to why it was rejected." *Id.* at ¶ Y. The paragraph continues:

> If the grievance is accepted, the Grievance Coordinator shall assign an appropriate respondent and identify the date by which the response is due . . . . The Grievance Coordinator may respond at Step I to grievances which require only minimal investigation or reject[] for reasons authorized by this policy. However, if the Grievance Coordinator responds to the merits of the grievance, a grievance interview must be conducted as required by Paragraph AA.

*Id*. At the interview, a grievant has an opportunity to explain the grievance more completely so that the respondent can gather any additional information necessary to respond to the grievance. *Id.* at ¶ AA.

---

[5] The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the December 19, 2003 version of the Policy Directive was in effect at all times applicable to the instant action.

The Policy Directive provides a number of reasons for which a grievance *must* be rejected and other reasons for which a grievance *may* be rejected.[6] A grievance coordinator must reject grievances (1) jointly filed by two or more prisoners or filed by multiple prisoners as an organized protest, (2) raising certain non-grievable issues, or (3) using profanity, threats of harm or demeaning language unless those words are part of the description of the behavior which forms the basis for the grievance. *Id.* at ¶¶ F, G. In contrast, a grievance coordinator has discretion to reject a grievance that is (1) vague, illegible, contains multiple unrelated issues or issues raised in another grievance filed by the same prisoner, (2) filed by a prisoner on modified access, (3) filed by a prisoner who did not attempt to resolve the issue with a staff member first, or (4) filed in an untimely manner. *Id.* at ¶ G.

The Policy Directive provides guidelines, including deadlines, for internal appeals of the denial of a grievance at Step II and Step III. *See id.* at ¶¶ R, DD. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form must be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time

---

[6]Portions of Policy Directive 03.02.130 use the words "shall be rejected" while other portions use the words "may be rejected." *See* MICH. DEP'T. OF CORR., Policy Directive 03.02.130, ¶¶ F, G.

limitations must be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

### III. Grievance

Plaintiff filed one grievance concerning the Eighth Amendment claim raised in his complaint. Plaintiff filed Grievance No. MCF-05-07-00483-123 on July 5, 2005, against MCF health service staff. (Ex. F to Compl., docket #1.) In Grievance No. MCF-05-07-00483-123, Plaintiff complains of being denied medical care for his injured toe.

The MDOC issued a Step I response, which stated:

> The grievant alleges that he has not received adequate health care. The grievant has been [seen] approximately seven times by the RN within the last couple of months for his complaint. He has been evaluated by the physician. The care provided has been appropriate and is consistent with the direction in PD 03.04.100 Health Services. There is no evidence to support the grievant's allegation. There is no evidence of violation of policy or procedure.

(Ex. F to Compl.) Plaintiff then appealed his grievance to Steps II and III. The Step II response was not attached to Plaintiff's complaint. The Step III grievance response states:

> Grievant alleges that he had to wait too long to see an MSP.
>
> Grievant is right. However it is noted in his record that he was seen multiple times by health care staff. Due to a shortage in MSP staff, the ability to schedule him with an MSP was delayed so that more urgent matters could be addressed. This does not negate the validity of grievant's claim. Administrative action is being taken to ensure that this does not happen in the future. As noted by the Step II respondent grievant's health was not compromised by the delay.
>
> Grievance resolved.

(Ex. I to Compl.)

In his complaint, Plaintiff alleges an Eighth Amendment claim against Defendants Hamilton, Whalen, Hix, Barrett and Kelley. In Defendants' motion for summary judgment, they claim that Plaintiff failed to exhaust his available administrative remedies because he did not name any Defendants in Grievance No. MCF-05-07-00483-123. Defendants argue that Plaintiff must follow MDOC Policy Directive 03.02.130, ¶ T, by naming all of the Defendants in his grievance. (Defs.' Br. in Supp. of Mot. for Summ. J. at 2, docket #10.) As noted by the Supreme Court in *Jones*, "[t]he PLRA requires exhaustion of 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a) but nothing in the statute imposes a 'name all defendants' requirement for grievances . . . ." *Jones*, 127 S. Ct. at 922. *See also Okoro v. Hemingway*, 481 F.3d 873, 874 (6th Cir. 2007) (finding that exhaustion, according to *Jones*, 127 S. Ct. at 923-25, is not "*per se* inadequate simply because a defendant was not named in the grievances"). In order to properly exhaust administrative remedies, prisoners must merely comply with the prison grievance procedures available to them. *Jones*, 127 S. Ct. at 922-23. Thus, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that defines the boundaries of proper exhaustion." *Id*. at 923.

In this case, MDOC Policy Directive 03.02.130, effective December 19, 2003, defines the requirements for proper exhaustion. This version of the MDOC Policy Directive states: "[t]he issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The record reflects that the MDOC did not reject or deny Plaintiff's Grievance No. MCF-05-07-00483-123 in a Step I, II or III response under MDOC Policy Directive 03.02.130, ¶ T for failure to name those persons being grieved; rather, the MDOC addressed the grievance on the merits.

As the *Woodford* Court noted:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Woodford,* 126 S. Ct. at 2385 (citation omitted). "[A]s a general rule . . . courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Woodford,* 126 S. Ct. at 2385-386 (citing *L.A. Tucker Truck Lines, Inc.*, 344 U.S. at 37) (emphasis omitted). In the instant case, the MDOC apparently found that Plaintiff properly exhausted his medical claim, even though he did not name any Defendants in his grievance, contrary to MDOC Policy Directive 03.02.130, ¶T, because it addressed his grievance on the merits. The MDOC must determine whether a prisoner satisfied the critical procedural rules under its policy directives, and, thus, when a procedural defect bars a grievance from being heard on the merits. When an administrative agency addresses an inmate's grievance and appeals on the merits, then the agency has found that the inmate satisfied the required critical procedural rules. *See Woodford,* 126 S. Ct. at 2385 (if the agency addresses a grievance on the merits, then the inmate has "us[ed] all steps that the agency holds out, and do[ne] so properly."). Therefore, Defendants[7] have not satisfied their burden, and, thus, Defendants' motion for summary judgment (docket #9) should be denied.

---

[7]As the MDOC did not deny Plaintiff's grievance in accordance with MDOC Policy Directive 03.02.130, ¶ T, for failure to name any Defendants in his grievance, then this Court must assume that Plaintiff exhausted his grievance against all of the Defendants in his civil action.

**Recommended Disposition**

For the foregoing reasons, I recommend that Defendants Hamilton, Whalen, Hix, Barrett and Kelley's motion for summary judgment (docket #9) be denied.


Dated:   January 18, 2008                    /s/  Joseph G. Scoville
                                             United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)©; FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).